833 So.2d 1026 (2002)
Freddy NOLAN, Plaintiff-Appellant
v.
ROOFING SUPPLY, INC., of Monroe and Frank Stone & Son, Inc., Defendants-Appellees.
No. 36,403-CA.
Court of Appeal of Louisiana, Second Circuit.
November 26, 2002.
*1027 Kenneth L. Harper, Jonesboro, for Appellant.
Gregory Scott More, for Appellee.
Before GASKINS, KOSTELKA and DREW, JJ.
DREW, J.
At issue is whether the homeowner's claims over a faulty slate roof have prescribed. Freddy Nolan, plaintiff, sued Roofing Supply, Inc. of Monroe (Roofing Supply), the supplier, and Frank Stone & Son, Inc. (Stone), the builder, claiming that the slate roof installed on his new home was defective or improperly installed. Nolan appealed the trial court's judgment sustaining the defendants' peremptory exceptions of prescription and dismissing his action with prejudice. For the following reasons, we affirm in part, reverse in part and remand to the trial court for further proceedings.

FACTS
The basic facts are undisputed. In 1994 Nolan hired Stone as general contractor on the construction of a new home. In 1994 Stone purchased from Roofing Supply rigid slate-like shingles for the roof. Stone had Bayou Roofing install the roof. The Nolans moved into the house just before Thanksgiving 1995 (according to their brief) or by December 1995 (as stated in the amended petition). From the beginning there were problems with shingles breaking. On several occasions, Stone had Bayou Roofing return to the property to *1028 replace broken shingles and to perform other tasks. On February 28, 2000, Nolan and Stone, along with personnel from Roofing Supply and Bayou Roofing, met at the Nolan residence to examine the roof. After the inspection, the builder and roofers concluded the shingles had failed. They abandoned any further attempts to repair the roof. On April 3, 2000, Ralph Norman of Roofing Supply sent a letter to Nolan informing him that no further repairs would be done. This letter is not in the record.

PROCEDURAL BACKGROUND
Nolan made the following allegations in his petition filed on March 28, 2001:
 Nolan contracted with Stone to build the home.
 Stone subcontracted with Bayou Roofing to install a slate roof.
 Roofing Supply sold the slate to Stone with a 50 year warranty against defects.
 After installation, the slate began to break apart and fall off the house.
 When Nolan complained to the defendants, they informed him there was no problem with the slate and that the breakage to the slate was caused by people walking on the roof.
 The slate was improperly installed or defective and needed to be removed and replaced.
Asserting a breach of the 50 year warranty, Nolan prayed for damages including removal and replacement of the roof, non-pecuniary loss, costs and interest. Stone responded with an exception of vagueness and ambiguity.
On June 8, 2001, Nolan filed an amended petition stating:
 The parties entered a contract in early 1994, and the house was completed enough for the Nolans to occupy the house by December 1995.
 The slate was sold by Supra Dura Manufacturing Corp., which provided a 50 year warranty. Supra Dura is now bankrupt and Roofing Supply should honor the warranty.
 The slate began to break up before Nolan moved into the house. Defendants inspected and attempted repairs to the roof on numerous occasions.
 On April 3, 2000 defendants abandoned attempts to repair the slate and informed Nolan the slate was defective.
Roofing Supply then filed an exception of no cause of action. Stone filed a motion to dismiss because the amended petition did not identify any warranties which Stone allegedly breached.
On September 6, 2001, Nolan filed a second amending petition and alleged that Nolan purchased the slate from Stone, who had purchased the material from Roofing Supply. Nolan asserted that, if the court found the roofing material to be defective, then the slate was useless to the point that neither Nolan nor Stone would have purchased it had they known of the defect. Nolan urged that he was subrogated to the rights of Stone and that the defendants had been given an opportunity to repair the defect. Nolan maintained that Stone had breached the warranties of the New Home Warranty Act.
Both Stone and Roofing Supply responded with exceptions of prescription. At the prescription hearing, the trial court heard argument of counsel but refused to receive testimony or other evidence. Finding that the New Home Warranty Act applied, the trial court sustained the exceptions of prescription. At the conclusion of the hearing and after the trial court's ruling, the trial court permitted plaintiff to place into the record depositions, presumably *1029 as a proffer, and the record of Nolan's initial suit filed September 7, 2000, and dismissed without prejudice April 27, 2001, for failure to request service within ninety days. The plaintiff filed the depositions of Robert Stone, the builder, and Steve Johnson of Bayou Roofing. The defendants filed the deposition of Ralph Norman of Roofing Supply. None of those filings were considered by the trial court.

PROFFERED DEPOSITIONS
Steve Johnson, owner with his parents of Bayou Roofing, Inc., stated in his deposition that his testimony was based upon a daily business log book (which is not in the record). Johnson said that the shingles, artificial slate, were delivered to the Nolan job approximately November 16, 1994. According to Johnson, the roofing job was finished on May 20, 1995. He returned to the job on September 20 and 22 to install vents; on October 6 to install a fireplace vent; and November 1, 1995, to install a stove vent. On August 14, 1996, Johnson roofed the boat house with a different type shingle. After being phoned by Stone, Johnson replaced 12 to 15 shingles and put screens on the chimneys to keep birds out on June 5 and 6, 1997. On that occasion, they also found a lot of broken shingles on the back of the house on which it appeared someone had been walking. On March 26, 1998, Bayou Roofing returned to the Nolans, again at Stone's request, to put up scaffolding to fix broken shingles on the upper roof. The repair was performed on March 30, 1998.
The next time they returned was not until February 28, 2000, when Johnson meet with Doug Norman of Roofing Supply, Stone and the Nolans. On earlier occasions, there had been only a few broken shingles. However, on that day, virtually every shingle was cracked or chipped. Before February 28, 2000, Johnson thought that his company had installed a few shingles with hairline cracks that had to be replaced over time, a normal occurrence with rigid shingles, according to Johnson. After seeing the extent of the cracking, he knew something was wrong with the shingles and not the installation by his company. On that date, he abandoned any effort to repair the shingles. During construction, both Mr. and Mrs. Nolan showed him broken shingles before they moved into the house. However, he denied discussing the massive problem with the Nolans before February 2000.
Nolan also placed into the record the deposition of Robert Stone, Nolan's general contractor, who stated he did not disagree with anything in Johnson's deposition. Stone stated Mrs. Nolan found a house plan in a book and worked with a draftsman who made several sketches of the 14,000 square foot home. Mrs. Nolan selected the shingles after seeing them in a book. Nolan negotiated with Ralph Norman of Roofing Supply to meet the lower quote and supply the shingles. Aside from normal breakage during construction, Stone learned for the first time that shingles were breaking and falling off on June 5, 1998, when the roofer put on the chimney screens. Stone stated he learned there was a real problem with the shingles themselves after the parties' inspection on February 28, 2000. On that date Johnson and Doug Norman of Roofing Supply climbed a ladder up to the roof. Doug came down and reported there was a problem with the shingles. Stone concluded either there was a defect in the shingles or the roof had been damaged by hail. Stone did not recall when the Nolans first complained about the breakage. In 1997 Johnson reported to Stone he had found cigarette butts indicating someone had been walking on the roof. Therefore, Stone told Johnson not to pursue repairs at that time. In March 1998 Stone acknowledged *1030 he was trying to repair shingles on the upper roof by sending Johnson from Bayou Roofing. Stone gave up on the roof on February 28, 2000 at the time of their group inspection. Stone also related that while he was not stating hail caused the damage, there was a hail storm in that area two months before. Stone did not bill for any repairs, and he stood behind his work until he determined the shingle breakage was not his fault.
At the conclusion of the hearing on December 11, 2001 after the trial court's ruling, the defendants placed the deposition of Ralph Norman of Roofing Supply into the record. A wholesale and retail roofing supplier, Norman said Roofing Supply bought these shingles directly from Super Dura Corporation in Pennsylvania sometime in 1993 or 1994. Stone bought the shingles from Roofing Supply for the Nolan job. Norman found out the shingles were failing after the joint meeting at the Nolans (February 28, 2000) attended by his son, Doug Norman. When he then tried to contact Super Dura about its warranty, he learned the company was bankrupt. On April 3, 2000, Norman wrote Nolan the letter (which was not placed into evidence) stating the shingles were failing at the lap edge. In Norman's opinion, there could be many causes and it would take a laboratory examination to determine the exact cause. Norman acknowledged the April 3, 2000, letter opined that the defect was in the manufacturing of the shingles.

 TIME LINE BASED UPON PLEADINGS, FILINGS IN RECORD AND PROFFER [1]
Early 1994 Nolan contracts with Stone to build Nolan a home with a slate roof;
Prior to November 1995 Supra-Dura Manufacturing Corporation (now bankrupt) manufactured the slate which
 had a 50 year warranty against defects; Roofing Supply sold the slate to Stone;
 Stone subcontracted with Bayou Roofing to install the roof;
November 14, 1994 Shingles delivered to the Nolan site (deposition of Steve Johnson with Bayou Roofing)
May 20, 1995 Bayou Roofing finished job (Johnson deposition)
September 20 and 22, 1995 Bayou Roofing installed vents (Johnson deposition)
October 6,1995 Bayou Roofing installed fireplace vent (Johnson deposition)
November 1,1995 Bayou Roofing installed stove vent (Johnson deposition)
November 1995 Nolans move into home before Thanksgiving or by December 1995 (according to Nolan's
 amended petition)
August 14, 1996 Bayou Roofing roofed boat house with a different shingle (Johnson deposition)
June 5-6, 1997 Bayou Roofing put bird screens on chimneys and replaced 12 to 15 shingles; Johnson
 also found a bunch of broken shingles which appeared caused by someone walking on
 the roof; they replaced a few shingles but after talking to Stone stopped (Johnson
 deposition)
March 28 and 30, 1998 Bayou Roofing put up scaffolding and replaced broken tiles on the upper roof (Johnson
 deposition)
February 28, 2000 Nolan, contractor, roofer and roofing supply company met to inspect the roof; After
 physical inspection by Johnson of Bayou Roofing and Doug Norman of Roofing
 Supply revealed that all the shingles were failing, repair attempts abandoned
 (Johnson deposition)
April 3, 2000 Norman sent Nolan a letter stating there would be no more repairs (Norman deposition)

*1031
September 2000 Nolan's first suit filed;
April 27, 2001 Nolan's first suit was dismissed without prejudice because no service was requested on
 defendants within 90 days.
March 28, 2001 This suit filed.

DISCUSSION
Ordinarily, the party claiming the matter is prescribed bears the burden of proof at the trial of the peremptory exception. However, if prescription is evident on the face of the pleadings, then the burden shifts to the plaintiff to show that the action has not prescribed. Campo v. Correa, 2001-2707 (La.6/21/02), 828 So.2d 502. The standard for review of a peremptory exception of prescription requires that this court strictly construe the statutes "against prescription and in favor of the claim that is said to be extinguished." Pratt v. Himel Marine, Inc., XXXX-XXXX (La.App. 1st Cir.6/21/02), 823 So.2d 394.

CLAIM AGAINST STONE
At the time this claim arose, the New Home Warranty Act, La. R.S. 9:3141 stated:
The Legislature finds a need to promote commerce in Louisiana by providing clear, concise, and mandatory warranties for the purchasers and occupants of new homes in Louisiana and by providing for the use of home owners' insurance as additional protection for the public against defects in the construction of new homes. This need can be met by providing for uniform building standards in those parishes and municipalities that have not yet adopted building codes; by requiring that all new residential buildings comply with building standards; by adopting provisions that clearly state the scope and the time of warranties; by providing for insurance protecting home owners from breaches of warranty; and by making the required warranties mandatory in most cases.
A 1999 amendment pronounced that the purpose was to provide warranties for new home purchasers and added that the warranty applied to any defect although there was no building standard directly regulating the defective workmanship or materials. Both before and after the amendment, that provision when read along with La. R.S. 9:3150 demonstrates that the New Home Warranty Act from its inception was intended to apply to any defective work or material. La. R.S. 9:3150 states:
This Chapter provides the exclusive remedies, warranties, and prescriptive periods as between builder and owner relative to home construction and no other provisions of law relative to warranties and redhibitory vices and defects shall apply. Nothing herein shall be construed as affecting or limiting any warranty of title to land or improvements.
The "warranty commencement date" is "the date that legal title to a home is conveyed to its initial purchaser or the date the home is first occupied, whichever occurs first." La. R.S. 9:3143(7). The builder warrants that, for one year following the warranty commencement date, the home would be free of defects. La. R.S. 9:3144. Before the owner could undertake any repair or action for breach of warranty, the owner "shall give the builder written notice, by registered or certified mail, advising him of all defects and give the builder a reasonable opportunity to comply with the New Home Warranty Act." La. R.S. 9:3145.[2] Any action to enforce rights *1032 under the New Home Warranty Act "shall prescribe thirty days after the expiration of the appropriate time period provided in R.S. 9:3144."[3] La. R.S. 9:3146.
As the exclusive remedy, warranty and prescriptive period between the builder, Stone and the homeowner, Nolan, the New Home Warranty Act applies in this dispute. The trial court properly granted the exception of prescription in favor of Stone, the builder. Nolan argues that by analogy to the law on redhibition, the attempts to repair the roof caused prescription to commence to run anew. However, as Nolan acknowledged in brief, there is no jurisprudence supporting his argument. The Legislature specifically fashioned for new homeowners an exclusive remedy against builders for defects. The prescriptive period is 30 days after the expiration of the warranty period. The Legislature could have, but did not, provide for interruptions in the warranty period. The warranty commencement date was just before Thanksgiving in 1995 (according to Nolan's brief) or by December 1995 (as alleged in the amended petition) and the warranty expired one year thereafter. The 30 day prescriptive period expired 30 days after the warranty expired, or by the end of December 1996. Although this court does not find an interruption in the initial 30 day prescriptive period, if the initial prescriptive period had been interrupted and the 30 day prescription commenced anew, numerous 30 day periods of time elapsed without interruption thereafter causing Nolan's action against Stone to have prescribed. The trial court did not err in finding that Nolan's exclusive remedy against Stone under the New Home Warranty Act had prescribed.

CLAIM AGAINST ROOFING SUPPLY
Notwithstanding the trial court's application of the New Home Warranty Act to both defendants, the New Home Warranty Act provides new homeowners protection only against the builder. La. R.S. 9:3150. The trial court erred as a matter of law in applying the New Home Warranty Act to Nolan's claim against Roofing Supply which sold the shingles to Stone.
Nolan's claim against Roofing Supply is based upon the law of redhibition defined in La. C.C. art. 2520:
The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.
A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.
A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.
Prescription for redhibition claims is governed by La. C.C. art. 2534
A. (1) The action for redhibition against a seller who did not know of the existence of a defect in the thing sold prescribes in four years from the day delivery of such thing was made to the buyer or one year from the day the *1033 defect was discovered by the buyer, whichever occurs first.
(2) However, when the defect is of residential or commercial immovable property, an action for redhibition against a seller who did not know of the existence of the defect prescribes in one year from the day delivery of the property was made to the buyer.
B. The action for redhibition against a seller who knew, or is presumed to have known, of the existence of a defect in the thing sold prescribes in one year from the day the defect was discovered by the buyer.
C. In any case prescription is interrupted when the seller accepts the thing for repairs and commences anew from the day he tenders it back to the buyer or notifies the buyer of his refusal or inability to make the required repairs.
The 1993 amendment to the article made the prescriptive period for a seller who did not know of the existence of a defect in the thing sold four years from the day of delivery of the thing, or one year from the day the defect was discovered by the buyer, whichever comes first. La. C.C. art. 2534(A)(1)[4]. La. C.C. art. 2534(A)(2) sets a one year prescriptive period for redhibition actions for defects in residential or commercial immovable property. That provision governs redhibitory actions by purchasers of immovable property against sellers of immovable property. Stichberry v. Nolan, 33,803 (La.App.2d Cir.8/23/00), 765 So.2d 1201. In this case, the plaintiff seeks to recover from the seller of allegedly defective shingles.
The prescriptive period for redhibition is interrupted by the seller's attempts to repair defects. La. C.C. art. 2534(C). If the seller attempts to remedy the defect, the prescriptive period does not start to run until all attempts to repair the defect are abandoned by the seller. Pratt v. Himel Marine, Inc., supra.
Nolan alleged in his amended petition that:
 he moved in by December 1995 and
 the slate began to break apart before he moved into the house and that
 "on numerous occasions defendants came to the house to inspect and attempt to repair the slate."
 defendants abandoned their repair attempts and notified Nolan on April 3, 2000 that they had abandoned repair attempts.
This action was filed on March 28, 2001, and is, therefore, prescribed on its face. The burden was on the plaintiff to show that the action had not prescribed. Campo v. Correa, supra.
In addition to erroneously applying the New Home Warranty Act instead of treating Nolan's claim against Roofing Supply as a redhibitory action, the trial court erred in refusing to permit the parties to introduce evidence at the prescription hearing. The record shows that the plaintiff had witnesses present to testify, and the trial court rejected that request. La. C.C.P. art. 931 provides that evidence may be introduced to support or controvert the exception of prescription pleaded prior to trial.
A legal error occurs when a trial court applies incorrect principles of law and such error is prejudicial. A legal error is prejudicial when it materially affects the outcome and deprives a party of substantial *1034 rights. When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo. See Lasha v. Olin Corp., 625 So.2d 1002 (La.1993). When a reversible error of law is made in the trial court, whenever possible, the appellate court should redetermine the facts de novo from the entire record and render a judgment on the merits. Thompson v. State, 97-0293 (La.10/31/97), 701 So.2d 952.
The trial court's application of the New Home Warranty Act to Nolan's claim against Roofing Supply was prejudicial and substantially affected the outcome of this matter. That ruling was a reversible error of law. In order to decide whether Nolan's claim against Roofing Supply is prescribed, the trier of fact should have made factual findings regarding prescription. See Dauterive Contractors, Inc. v. Landry and Watkins, 01-1112 (La.App. 1st Cir.3/13/02), 811 So.2d 1242. The trial court's refusal to take evidence on whether Nolan's claim against Roofing Supply was prescribed makes a de novo review by this court impossible. While the parties proffered some depositions, the information therein is inadequate for this court to make a de novo review.
Therefore, the trial court's action sustaining the exception of prescription and dismissing Nolan's claim against Roofing Supply is vacated, set aside and reversed. The matter is remanded to the trial court for an evidentiary hearing on Roofing Supply's exception of prescription to Nolan's action in redhibition. In all other respects, the judgment is affirmed.

DECREE
That portion of the trial court's judgment which granted Roofing Supply's exception of prescription against Nolan's action against it is reversed, vacated and set aside. The matter is remanded for further proceedings in accordance with this opinion. In all other respects, the judgment is affirmed. Costs are assessed equally against Nolan and Roofing Supply.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
NOTES
[1] At the conclusion of the hearing on prescription, the trial judge declined to take testimony. The plaintiff's counsel indicated that he had witnesses ready to testify and that he had a couple of depositions to place into the record. The record is silent as to the specific depositions to be placed into evidence, although the trial court indicated they would be filed into the record. The December 11, 2001, notations from the clerk of court show the following were filed: By Nolan-record in Nolan's previous suit dismissed without prejudice and depositions of Robert Johnson of Bayou Roofing and Robert Stone, the general contractor. The defense filed a deposition from Ralph Norman of Roofing Supply. Without explanation, depositions of plaintiff and his wife were filed with the clerk of court on January 24, 2002. Both Nolan and the defendants refer to the Nolan depositions in their briefs to this court. These later depositions are not part of the record on appeal and were not considered by this court.
[2] In 1997, the statute was amended to provide that the owner had to give the notice "within one year of the discovery of the defect." The 1997 amendment also added:

"The builder shall give the owner written notice of the requirements of this Chapter at the time of closing."
[3] In 2001, the legislature amended this provision to make the thirty day period peremptive rather than prescriptive.
[4] The comments to art. 2534 explain that the prescriptive period for good faith sellers was extended to make Louisiana consistent with other jurisdictions governed by the Uniform Commercial Code, to discourage precipitate action by disappointed buyers and to facilitate settlement of disputes between buyers and sellers.