765 So.2d 1201 (2000)
Dawna and Avery STICHBERRY, Plaintiffs-Appellees,
v.
Frances Suzanne Curry Bankston NOLAN, Defendant-Appellant.
No. 33,803-CA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 2000.
*1202 Smith & Jacobs by Charles A. Smith, Minden, E. Charles Jacobs, Counsel for Appellant.
Gary L. Fox, Shreveport, Counsel for Appellees.
Before STEWART, CARAWAY and PEATROSS, JJ.
STEWART, J.
The plaintiffs, Dawna and Avery Stichberry, filed suit against the defendant, Frances Suzanne Curry Bankston Nolan, for damages based on claims of breach of contract and redhibition involving the sale of a house. The trial court found in favor of the Stichberrys and awarded $12,233.16 in damages. On appeal, Ms. Nolan asserts that the Stichberrys' claim of redhibition is prescribed and that the trial court erred in finding redhibitory defects in the roof of the house. We find that the redhibitory action is prescribed, amend the trial court's judgment, and affirm as amended.

FACTS
In December 1996, the Stichberrys, who were living in North Dakota, and Ms. Nolan entered a buy-sell agreement for the Stichberrys' purchase of a house owned by Ms. Nolan at 141 Oakridge in Benton, Louisiana. Since the Stichberrys were out of state, friends in Louisiana helped to find a house. Carol Faneuf, a realtor, represented the Stichberrys in their negotiations with Ms. Nolan. The following provision, which listed items to be addressed by Ms. Nolan prior to the sale, was included in the buy-sell agreement:
(X) ADDITIONAL PROVISIONS: Electric cooktop to be replaced; remainder of siding to be installed; roof to be repaired; all trash to be removed from yard. Remaining paint, insulation, door and other items required for remodeling to remain.
Attached to the agreement was a "Property Condition Disclosure Form" signed by Mrs. Nolan which indicated the existence of a leak in the roof of the house. A written explanation on the disclosure form stated that there was a small leak on the porch roof and that a water stain forms around a skylight after a large rain. The disclosure form was dated December 11, 1996. Both the buy-sell agreement and the disclosure form were signed by Ms. Nolan and the Stichberrys. Although not included on the disclosure form, Ms. Nolan *1203 informed the Stichberrys about a problem with an electrical outlet that did not work.
The Stichberrys had a systems inspection conducted to check the heating, air conditioning, plumbing, built-in appliances, electrical systems, and the sewerage and water systems of the property. The systems inspection report dated December 31, 1996 found the systems to be in normal working condition, except for a furnace which required a vent pipe adapter. Ms. Nolan corrected the deficiency. Also, prior to closing, Ms. Nolan made the repairs mentioned on the buy-sell agreement. She replaced a broken ceramic top on the cooktop, contracted with Discount Siding to repair the vinyl siding, and hired a carpenter to repair the roof by placing tar along the seam where the leak appeared to occur. Because the Stichberrys were moving to Louisiana from out of state and needed a place to stay upon their arrival, the parties also entered a "Buyer Early Occupancy Agreement" on January 3, 1997, whereby the Stichberrys took possession of the house prior to the closing of the sale and agreed to pay a rental of $19.95 per day until the closing later in the month of January 1997. A provision of the early occupancy agreement stated that the buyer was required to make known to the seller "any and all objections ... prior to accepting occupancy."
Shortly after moving into the house, the Stichberrys noticed various problems. An area of vinyl siding, referred to as the soffit, kept popping off the house. A burner on the cooktop did not work. The roof over the porch continued to leak. Also, the roof around the skylight and chimney areas in the house continued to leak and cause damage to the interior of the house. Avery Stichberry discovered that electrical wiring found above a ceiling tile did not appear to be up to code specifications. The Stichberrys also found evidence of rotten wood under the kitchen sink which indicated the possibility of plumbing problems. The Stichberrys contacted Nolan about their concerns, particularly regarding the leaks in the roof. The parties spoke on a number of occasions about what repairs to the roof were needed. Nolan did send at least two roofing contractors to the Stichberrys' residence to make the needed repairs. However, the repairs to the roof were never made.
On May 26, 1998, the Stichberrys filed suit for damages based on breach of contract and redhibition. At the bench trial, the Stichberrys presented expert testimony from George P. Moore, Jr., of First General Services of Shreveport and Northwest Louisiana, who had inspected the roof and electrical system in the Stichberrys' house in January 1998 and determined that the needed repairs would cost $12,233.16, $750 of which was attributable to the needed electrical repairs. The trial court ruled in favor of the Stichberrys as to its claims involving the electrical wiring and the roof and awarded damages of $12,233.16. The trial court found that the electrical wiring deficiency constituted a hidden defect which was unknown to Ms. Nolan, the seller, at the time of the sale. The trial court also found that Ms. Nolan was bound to repair the roof as set forth in the buy-sell agreement, and that the inclusion of "roof to be repaired" in the agreement meant that she was required to do whatever repairs would be necessary to prevent further leaking. The trial court denied the Stichberrys' claims as to other problems in the house.
Following this adverse judgment, Ms. Nolan appealed and asserted for the first time an exception of prescription as to the Stichberrys' redhibition claim. Ms. Nolan argues both that the Stichberrys' redhibition claim prescribed since they did not file suit until over one year from the closing of the sale on January 20, 1997 and that the trial court erred in finding any redhibitory defects in the roof.

DISCUSSION
The seller of a house warrants the buyer against redhibitory defects which render the house either useless or its use so inconvenient that it must be presumed the buyer would not have purchased it had he *1204 known of the defect or would have purchased it at a lesser price. La. C.C. art. 2520.
A redhibitory action involving the sale of residential immovable property prescribes one year from the day delivery of the property was made to the buyer when the seller did not know of the existence of the defect, or one year from the day the defect was discovered by the buyer when the seller either knew or is presumed to have known of the defect. La. C.C. art. 2534. The exceptor/seller bears the burden of showing the redhibitory action is barred by prescription. Manning v. Scott-Hixson-Hopkins, Inc., 605 So.2d 233 (La.App. 2d Cir.1992). However, where the petition shows that the claim has prescribed, the buyer must prove otherwise. Id. Also, once the exceptor/seller proves the lapse of one year either from the date of delivery or the date of discovery of the defect, whichever applies, the burden shifts to the buyer to show an interruption or suspension of prescription. Id.
Here, the claim of redhibition appears prescribed from the face of the petition. The Stichberrys filed their petition on May 6, 1998. The petition states that the property was purchased on January 20, 1997. Additionally, the evidence in the record, namely, the buyer early occupancy agreement, shows that the Stichberrys took possession of the property on January 4, 1997, prior to the closing of the sale. Filing of their claim over one year after the date of delivery renders the Stichberrys' redhibition claim untimely on its face.
The trial court determined the electrical problems in the house to be a redhibitory or hidden defect of which the seller, Ms. Nolan, had no knowledge. We find no error in the trial court's determination. No evidence indicates that Ms. Nolan ever accepted the house back for repairs to the electrical system so as to interrupt prescription. Mr. Stichberry even testified that he did not recall ever discussing the electrical wiring problem with Ms. Nolan. We find that the Stichberrys' claim for redhibition is prescribed. Therefore, we must deduct from the damages awarded the amount attributable to the redhibitory defect in the wiring. The trial court's award of damages was based upon the estimate given by Mr. Moore. According to the estimate, the cost of the electrical repairs would amount to $750. We hereby amend the judgment to reduce the award of damages by $750.
Our determination that the Stichberrys' redhibtion claim prescribed does not absolve Ms. Nolan from liability for damages due to her failure to repair the roof of the house. Ms. Nolan asserts that the law of redhibtion does not apply to the defects in the roof since she disclosed the defects to the Stichberrys prior to the sale. While Ms. Nolan is correct in asserting that defects made known to the buyer at the time of the sale are not redhibitory defects, she overlooks her contractual obligation to repair the roof in accordance with the terms of the parties' buy-sell agreement. The buy-sell agreement lists "roof to be repaired" as a condition of the sale. We must determine whether Ms. Nolan failed to fulfill this contractual obligation.
The evidence shows that Ms. Nolan attempted to repair the roof. Ms. Nolan testified that she had a carpenter make repairs to the roof prior to the closing of the sale. However, the evidence also shows that the repair attempt was not successful. Approximately one month after the closing, the roof was still leaking. Efforts by Ms. Nolan and the Stichberrys to agree upon and obtain the needed repairs were also not successful.
The interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. Courts look first to the words of the contract to determine the parties' intent. When the words are clear and explicit, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046; Amend v. McCabe, 95-0316 (La.12/01/95), 664 So.2d 1183. Here, the words of the buy-sell agreement state that the roof is to *1205 be repaired. Ms. Nolan disclosed the existence of leaks on the property disclosure form attached to and made part of the buy-sell agreement. The trial court determined that the clear and explicit meaning of the roof repair condition in the buy-sell agreement is to do whatever it takes to repair the roof so that it does not leak. We find no error in this determination. Ms. Nolan failed to repair the roof so that it no longer leaked. Consequently, she breached her contractual obligation and is liable for those damages attributable to the repair of the roof.

CONCLUSION
For the reasons expressed, we grant Ms. Nolan's exception of prescription as to the Stichberrys' redhibition claim and amend the trial court's judgment to deduct damages in the amount of $750 attributable to repairs to the electrical system in the house. We affirm that portion of the trial court's judgment granting the Stichberrys' breach of contract claim and amend the award of damages to $11,483.16, an amount reflecting the deduction of $750. Costs are divided equally between the parties.
AMENDED AND AFFIRMED.