907 So.2d 890 (2005)
Gerald Thomas WALDROP, and Wanda Ruth Telano Waldrop, Plaintiffs-Appellants
v.
Paul Loy HURD, Defendant-Appellee.
No. 39,855-CA.
Court of Appeal of Louisiana, Second Circuit.
June 29, 2005.
*891 The Bezou Law Firm by Jacques F. Bezou, Candice L. Jenkins, Covington, for Appellants.
Mayer, Smith & Roberts, LLP, by David F. Butterfield, Shreveport, for Appellee.
Before CARAWAY, PEATROSS & DREW, JJ.
PEATROSS, J.
In this legal malpractice case, Tommy and Wanda Waldrop hired attorney Paul Loy Hurd to handle the sale of their business, Mud City Yamaha, Inc., to Wade Cleveland and Riverside Kawasaki Suzuki, Inc. ("Riverside"). Mr. Hurd failed to properly perfect a security interest in certain collateral offered by Mr. Cleveland to secure owner financing for the sale; and, when Mr. Cleveland defaulted on the note, the Waldrops were unable to proceed against the collateral. The Waldrops subsequently filed this suit against Mr. Hurd for malpractice and Mr. Hurd filed an Exception of Prescription which was sustained by the trial court. The Waldrops appeal the ruling on the exception. For the reasons stated herein, we affirm.

FACTS
As stated, Mr. Cleveland and Riverside purchased the Waldrops' business, paying a portion of the purchase price with proceeds from a small business loan and issuing a promissory note for the balance. The note was to be secured by certain assets of Riverside and property owned by Mr. Cleveland, including an 18-wheel Peterbilt truck and trailer and certain immovable property. The sale took place on May 24, 2000.
Mr. Cleveland and Riverside failed to make payment on the note due February 1, 2001. The Waldrops then attempted to get information from Mr. Cleveland's banker at Community Trust Bank regarding Mr. Cleveland's failure to pay. Mr. Waldrop testified in deposition that the banker told him that Mr. Cleveland "did not have to pay ... because they had it in the contracts that he could stop paying me the interest on the loan if his money got tight. So that was the first account that I had of anything like that happening...." In February or March 2001, the Waldrops learned that Mr. Cleveland had sold the Peterbilt truck and trailer. The Waldrops questioned Mr. Cleveland about the sale of the collateral and told him that it was subject to a security interest in their favor. Mr. Waldrop testified:
One of my collaterals or promissories that Paul Hurd had wrote up for me, which was an 18-wheeler truck and trailer, [Mr. Cleveland] sold it. I went to him about it. I said, you cannot  you couldn't even sell that truck, I've got a mortgage on it. He laughed and he said, oh no, you don't, it's not even filed at the courthouse. I called the bank, and they said, no, it's not filed at the courthouse.
Regarding the call to the bank concerning whether the lien had been filed on the truck and trailer, Mr. Waldrop testified:

*892 I called Brian Turner at Community Trust Bank and was complaining about it, and he said, well, there wasn't a mortgage filed against it. So I checked to see if there was a mortgage filed on it. Mr. Hurd had not even filed the mortgage on the truck, and they all laughed. So I lost on that part, too, right there. This was one  that's  those two things that happened right there got me to go see the attorney, Joe LeBeau....
The date of the conversation with the banker and the date on which they became aware of the sale of the truck and trailer are not certain. As indicated in the above-quoted testimony, the Waldrops confirmed, with the bank and the Office of Motor Vehicles, that the security interest on the truck and trailer had not been filed.
In addition, Mrs. Waldrop had a conversation with Mr. Hurd at which time she asked him where she should look to determine if a valid lien existed against the truck and trailer. In this same conversation, she requested a copy of their file at the closing of the business. These events all occurred prior to her picking up the file from Mr. Hurd's office on March 9, 2001.
Subsequently, on April 6, 2001, the Waldrops met with attorney Joseph LeBeau to retain him to review the file and advise them. Mr. LeBeau explained the meaning of all of the closing documents to the Waldrops and, on April 12, 2001, sent a letter to them advising them that his review of the file revealed that Mr. Hurd had improperly drawn and/or failed to file the security instruments on the collateral. The Waldrops filed this suit against Mr. Hurd on March 21, 2002.
Mr. Hurd filed an Exception of Prescription, which was sustained by the trial court and this appeal ensued.

ACTION OF THE TRIAL COURT
The applicable time period(s) for filing legal malpractice claims is found in La. R.S. 9:5605(A), which provides as follows:
No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
The petition and supplemental petition in the case sub judice do not contain any dates on which the Waldrops claim the negligence occurred or when they became aware of the alleged negligence. Although the date of the closing of the sale is not set forth in the petition, the closing date is, however, easily determined by examining the closing documents. Finding that the acts of malpractice alleged in the petition occurred in conjunction with the sale of the business, finalized on May 24, 2000, and that the suit was not filed until March 21, 2002, the trial court properly found that the claim of the Waldrops was prescribed on its face. Accordingly, the trial court held that the burden shifted to the Waldrops *893 to show that their claim was timely filed.
The trial court's focus then turned to contra non valentem and, finding that the Waldrops did not show that their suit was filed within one year of the date on which they became aware, or should have become aware of, Mr. Hurd's negligent omission, the trial court sustained the exception. The trial court stated that the Waldrops were "clearly" aware that something might be wrong several weeks prior to their meeting with Mr. LeBeau and noted that Mr. Waldrop admitted that the first account he had that something was wrong was after his initial conversation with Mr. Cleveland's banker. Further, the Waldrops became aware in mid-to-late February that the security interest on the truck and trailer had not been filed. The trial court concluded that the events of February/March 2001 (all of which occurred no later than March 9, 2001) would be enough to put a reasonable man on notice that the collateral had not been secured properly by Mr. Hurd, and, therefore, ruled that the suit filed on March 21, 2002, was untimely. 
DISCUSSION
On appeal, the Waldrops assign the following errors (verbatim):
1. The trial court erred in determining Plaintiffs' Petition was prescribed on its face thereby erroneously shifting the burden of proof to plaintiffs to prove their claim has not perempted.
2. The trial court committed manifest error by determining that Appellants' claim for professional negligence pursuant to La. R.S. 9:5605 was perempted.

Burden of Proof
Generally, prescription statutes are strictly construed against prescription and in favor of the claim sought to be extinguished by it. Bailey v. Khoury, 04-0620 (La.1/20/05), 891 So.2d 1268. The burden of proof on the prescription issue lies with the party asserting it unless the plaintiff's claim is barred on its face, in which case the burden shifts to the plaintiff. Id., citing Campo v. Correa, 01-2707 (La.6/21/02), 828 So.2d 502. In Campo, supra, the supreme court concluded that "a petition should not be found prescribed on its face if it is brought within one year of the date of discovery and facts alleged with particularity in the petition show that the [plaintiff] was unaware of the malpractice prior to the alleged date of discovery, and the delay in filing suit was not due to willful, negligent, or unreasonable action of the [plaintiff]." (Emphasis added.)
In the absence of evidence, the objection of prescription must be decided upon the facts alleged in the petition, and all allegations thereof are accepted as true. See La. C.C.P. art. 931; Scott v. Sears, Roebuck and Co., 99-0571 (La.App. 1st Cir.12/22/00), 778 So.2d 50. In Stichberry v. Nolan, 33,803 (La.App. 2d Cir.8/23/00), 765 So.2d 1201, this court looked to the evidence presented at the trial of an exception of prescription to find the date of occupancy of a property, where the petition was silent as to this date. We found the prescriptive period commenced on that date of occupancy (or delivery of the property) and that claim was prescribed on its face as the petition was filed more than one year from that date.
In the case sub judice, as in Stichberry, supra, neither the petition nor supplemental petition contained the date on which the period(s) should commence, i.e., the date of the alleged malpractice. Further, the petition in this case does not contain the date on which the Waldrops submit they became aware of the alleged *894 malpractice. Also similar to Stichberry, the exception in this case was not decided on the pleadings alone; rather, there was documentary evidence submitted as well as testimony adduced. It was clearly established through this evidence that the date of the alleged omission, i.e., Mr. Hurd's failure to file the appropriate documents to perfect the security interest in the truck and trailer, coincided with the date of the closing of the sale on May 24, 2000. This date is not in dispute. We find no error in the trial court's conclusion that the omission in this case coincided with the closing of the sale on May 24, 2000, and that, since this suit was filed more than one year from this omission, the burden of proof shifted to the Waldrops to prove that their claim was timely filed.
We note, however, that, even if the trial court erred in finding that the petition was prescribed on its face due to the absence of specific allegations of the date of discovery; and, thus, the burden was improperly placed on the Waldrops to show that their claim was timely, Defendant met the burden of showing that the claim was prescribed. See Chandler v. Highland Clinic, 28,204, (La.App. 2d Cir.4/3/96), 671 So.2d 1271.[1]

Ruling on Exception of Prescription
On the trial of an exception of prescription pled prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition. La. C.C.P. art. 931. When evidence has been introduced, the court is not authorized to accept the plaintiffs' allegations as true. Crain v. Pletka, 35,636 (La.App. 2d Cir.1/23/02), 806 So.2d 950, citing Schoen v. Walling, 31,598 (La.App. 2d Cir.2/24/99), 728 So.2d 982 and Creighton v. Bryant, 34,893 (La.App. 2d Cir.6/20/01), 793 So.2d 275. When evidence is received on the trial of the exception of prescription, the factual conclusions of the trial court are reviewed by the appellate court under the manifest error-clearly wrong standard. Creighton, supra. If the findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse the trial court even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Creighton, supra. Although there was no hearing in the instant matter, evidence was introduced in the form of deposition testimony. Accordingly, we review this matter under the manifest error/clearly wrong standard.
As previously stated, legal malpractice actions are subject to one-year and three-year periods as provided in 9:5605, supra. The statute also makes the discovery rule applicable to legal malpractice actions, allowing a plaintiff one year from the date that the "alleged act, omission, or neglect is discovered or should have been discovered" in which to file suit. There is no dispute that the alleged negligent omission in this case was Mr. Hurd's failure to perfect the security interest in the truck and trailer by filing the appropriate UCC documents, which should have coincided close in time to the closing of the sale on May 24, 2000. This event triggered the running of the one-year and three-year periods; and, unless it is shown that the one-year period commenced at a later date by virtue of the discovery rule, the claim *895 was extinguished under the one-year period, well before the filing of this suit on March 21, 2002. We now address the application of the discovery rule to the facts of this case.
In Griffin v. Kinberger, 507 So.2d 821 (La.1987), the supreme court explained the discovery rule, stating that the one-year period commences running on the date the injured party discovers or should have discovered the facts upon which his cause of action is based. Constructive knowledge sufficient to commence the running of prescription, however, requires more than a mere apprehension that something might be wrong. Creighton, supra, citing Cordova v. Hartford Accident & Indemnity Co., 387 So.2d 574 (La.1980). Prescription does not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent or unreasonable. Young v. Clement, 367 So.2d 828 (La.1979). The standard of reasonableness articulated in Griffin is applicable in legal malpractice cases. Carroll v. Wolfe, 98-1910 (La.App. 1st Cir.9/24/99), 754 So.2d 1038; Ledbetter v. Wheeler, 31,357 (La.App. 2d Cir.12/9/98), 722 So.2d 382.
The Waldrops claim that they did not discover, nor should they have discovered, the alleged negligent acts of Mr. Hurd until they had consulted with Mr. LeBeau and received his letter dated April 12, 2001, advising them of his opinion that Mr. Hurd had been negligent in failing to perfect the security interest in the truck. The trial court, on the other hand, found ample evidence in the record to support its finding that the Waldrops were aware of Mr. Hurd's failure prior to contacting Mr. LeBeau. In fact, Mr. Waldrop testified that the first time he was aware that something was wrong was after his first conversation with the bank representative shortly after Mr. Cleveland missed his February 2001 payment. Even more significant is Mr. Waldrop's admission in his testimony that Mr. Cleveland advised him that he did not have a security interest in the truck as nothing had been filed. Finally, Mr. Waldrop admitted that, through inquiries of the bank and the Office of Motor Vehicles, he was made aware that there was no lien filed against the truck and trailer. These events, taken together, constitute more than a mere apprehension that something might be wrong; and, again, all of these events occurred prior to Mrs. Waldrop's retrieval of the file from Mr. Hurd on March 9, 2001, and prior to the Waldrops' consultation with Mr. LeBeau shortly thereafter.
In summary, from our review of the record, it is apparent that the trial court could have reasonably concluded that the Waldrops were put on notice of Mr. Hurd's negligence as early as February 2001, when the bank officer and Mr. Cleveland informed them that there was no filing on the truck and trailer and, a short time later, when the Waldrops' inquiry to the Office of Motor Vehicles revealed no lien had been filed on the truck  all of which occurred prior to March 9, 2001. Again, suit was filed more than one year later on March 21, 2002. We find no clear or manifest error in the trial court's conclusion.

CONCLUSION
For the foregoing reasons, the judgment of the trial court sustaining Defendant's Exception of Prescription is affirmed. Costs are assessed to Gerald Thomas Waldrop, et al.
AFFIRMED.
NOTES
[1] In Chandler, this court found that plaintiffs' petition was erroneously deemed prescribed on its face and, thus, the trial court erred in shifting the burden of proof to plaintiffs. The burden of proof, therefore, rested with defendants to prove that plaintiffs' claim had prescribed. On the facts of Chandler, however, we concluded that, despite these errors, the trial court's conclusion was correct because defendants met the requisite burden of proof.