GASKINS, J.
 

 hln this redhibition suit arising from the sale of a house, the plaintiff appeals from a trial court judgment granting the defendants’ exception of prescription. We affirm.
 

 FACTS
 

 The defendants, William and Gwendolyn Falbaum, owned a house located on Pierre-mont Road in Shreveport, Louisiana. They bought the house from Edna Kaye Maples in June 1999. During Ms. Maples’ ownership of the house, she experienced some water and drainage issues. As a result, in 1993, she consulted Dirk Hyde of Hyde Engineering, Inc. In a letter dated July 15, 1993, Mr. Hyde suggested a two-phase solution to remedy the problems. Ms. Maples undertook the first phase. After they purchased the house, the defendants completed the second phase, as well as a subsequently recommended third phase.
 

 The defendants sold the house to the plaintiff, Susan Marie Derivas, for $236,600 on December 23, 2004. In the property disclosure form, the defendants revealed that the lower level had “taken water by flooding.”
 
 [1]
 
 Prior to the sale, the plaintiff received a positive home inspection report by American Dream Home Inspection Service.
 

 On February 21, 2007, the plaintiff filed suit against the defendants. She asserted that from September to October 2005, she began to notice gaps in the fireplace mantle in the living room, difficulties closing the back door, | ?and gaps in the sheetrock seaming in the entry way. On February 22, 2006, Mike Denton of Power Lift Foundation Repair-Residential, LLC, inspected the residence and found evidence of water seepage and patching in the side walls of the basement. According to the petition, the plaintiff learned from Mr. Hyde that he had previously consulted with the defendants and Ms. Maples. The plaintiff further asserted that she then hired Durr Engineering to inspect the property and that Don A. Durr, Jr., made several suggestions as to how to improve the drainage and correct the foundation problems. She alleged that Mr. Durr learned that Hyde Engineering made several suggestions for repairs and that at least one of the drainage improvements was not allowed by the homeowner’s association. Power Lift made the foundation repairs for $7,800, but other cosmetic repairs needed to be made.
 
 *1238
 
 Also, the estímate for correcting the drainage problem was between $15,000 and $18,000, plus costs of cosmetic repairs.
 

 The plaintiff alleged that while the defendants disclosed the installation of three French drains in 1999 to remedy drainage problems, they failed to disclose problems with water seepage into the residence or with the foundation even though they had knowledge of these issues. Furthermore, she contended that the defects were not apparent and that she did not become aware of them until after February 22, 2006. The plaintiff requested return of the purchase price with interest or alternatively a reduction in the purchase price, as well as damages and attorney fees.
 

 On September 28, 2007, the defendants filed an answer and an exception of prescription in which they asserted the one-year prescriptive Uperiod of La. C.C. art. 2534. The defendants argued that they made the necessary repairs to the drainage while they owned the house and that the foundation was in good condition at the time of the sale. In support of their exception, the defendants submitted the depositions of Mr. Falbaum and Mr. Hyde, as well as a copy of the cash deed to the plaintiff.
 

 The exception was argued and submitted on November 5, 2007. The trial court found that the sellers knew or should have known of problems; thus, the one-year good faith prescriptive period was not applicable. However, it sustained the exception based upon the suit not being filed within one year of circumstances that should have prompted an investigation, i.e., the problems with the fireplace mantle, the back door, and the sheetrock. Judgment granting the exception and dismissing the plaintiffs suit was signed on November 5, 2007.
 

 On November 18, 2007, the plaintiff filed a motion for a new hearing on the exception. She argued that she did not learn that the problems she discovered in September or October 2005 might be related to redhibitory defects existing at the time of the sale until on and after February 22, 2006. A hearing was held on March 31, 2008; the trial court denied the plaintiffs motion. Judgment in conformity with this ruling was signed on April 4, 2008.
 

 The plaintiff appeals.
 

 LAW
 

 A redhibitory action involving the sale of residential immovable property prescribes one year from the day delivery of the property was made |4to the buyer when the seller did not know of the existence of the defect, or one year from the day the defect was discovered by the buyer when the seller either knew or is presumed to have known of the defect. La. C.C. art. 2534.
 
 [2]
 
 The exceptor/seller bears the burden of showing the redhibitory action is barred by prescription. However, where the petition shows that the claim has prescribed, the buyer must prove otherwise. Also, once the exceptor/seller proves the lapse of one year either from the date of delivery or the date of discovery of the defect, whichever applies, the burden shifts to the buyer to show an interruption or suspension of prescription.
 
 *1239
 

 Stichberry v. Nolan,
 
 33,803 (La.App.2d Cir.8/23/00), 765 So.2d 1201.
 

 Prescription does not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong; it begins when the plaintiff has a reasonable basis to pursue a claim.
 
 Gadpaille v. Thomas,
 
 43,412 (La.App.2d Cir.8/13/08), 990 So.2d 126. Normally, a crack or separation in a wall is deemed apparent evidence of a defect. When the buyer discovers such a crack, the one-year prescriptive period begins to run.
 
 Gadpaille v. Thomas, supra.
 

 When prescription is raised by peremptory exception, with evidence being introduced at the hearing on the exception, the trial court’s findings of fact on the issue of prescription are subject to the manifest error-clearly | ¿wrong standard of review.
 
 London Towne Condominium Homeowner’s Association v. London Towne Company,
 
 2006-401 (La.10/17/06), 939 So.2d 1227. Under the manifest error standard of review, a factual finding cannot be set aside unless the appellate courts finds that it is manifestly erroneous or clearly wrong.
 
 London Towne Condominium Homeowner’s Association v. London Towne Company, supra.
 
 In order to reverse a fact finder’s determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous.
 
 Stobart v. State through Department of Transportation and Development,
 
 617 So.2d 880 (La.1993). Where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong.
 
 Stobart, supra.
 

 To determine whether a defect is apparent, courts consider whether a reasonably prudent buyer, acting under similar circumstances, would discover it through a simple inspection of the thing sold. A simple inspection is more than a casual observation; it is an examination of the article by the buyer with a view of ascertaining its soundness.
 
 Spraggins v. Lambeth,
 
 42,693 (La.App.2d Cir. 12/5/07), 973 So.2d 165.
 

 DISCUSSION
 

 The plaintiff argues that the date that should be used for the running of the one-year prescriptive period is February 22, 2006, when she learned from professional engineers that the house had redhibitory defects that |fiexisted at the time of the sale, not September and October 2005, when she first noticed cracks in the fireplace mantle and the sheetrock. As a result, she contends that the trial court was manifestly erroneous in its granting of the exception of prescription and abused its discretion in refusing to grant her motion for a new hearing. The plaintiff emphasizes that she claims two distinct redhi-bitory defects—structural defects and drainage defects. She asserts that her discovery of structural defects of unknown origin in the fall of 2005 should not have begun the running of prescription on her claim for drainage defects.
 

 Like the trial court, we find that the plaintiffs discovery of the cracks in the fall of 2005 commenced the running of prescription as to the alleged structural defects. See
 
 Gadpaille v. Thomas, supra,
 
 wherein the discovery of cracks in the walls of a house in December 2003 commenced the running of the one-year prescriptive period under La. C.C. art. 2534(B); as a result, the buyers’ cause of action had prescribed before their suit was filed in February 2005. In the instant case, the
 
 *1240
 
 plaintiff discovered several different indications of a structural problem in, at the latest, October 2005; therefore, the one-year prescriptive period under La. C.C. art. 2534(B) had run by the time she filed suit in February 2007.
 

 As to the alleged drainage defects, the plaintiff asserts that she had no notice of any such problems before February 2006 when she consulted experts who informed her of these additional issues. She maintains that there was no connection between the structural defects and the drainage ones.
 

 |7In support of her argument, the plaintiff points to the obvious sloping of outdoor steps toward the house, allowing water to pool against the wall and seep inside the house. She contends that since the defendants had seen a copy of Hyde’s 1993 letter (which she did not see prior to purchasing the house from the defendants), they knew that these steps should be graded and sloped away from the house to prevent drainage problems.
 

 The 1993 Hyde letter discusses, among other things, various components of the suggested first phase of remedial work, including:
 

 B. Upon completion of the installation of the French drain and sealing and moisture proofing of the south wall, the adjacent ground surface should be back-filled and graded to drain moisture away from the south wall and appropriately sodded and terraced to drain storm water away from the residence and prevent erosion of adjacent soils to the street.
 

 According to the plaintiff, the fact that the slope of the steps had changed over time and they no longer sloped away from the house was the reoccurrence of an undisclosed defect which was not readily discoverable by her; however, she asserts that it was obvious to the defendants at the time of the sale. Thus, she maintains that the trial court committed clear error as to the drainage defects.
 

 The defendants asserted that they took all of the corrective measures that they were aware were necessary to remedy any drainage issues and that after completing the recommended work, which included the installation of three French drains, they never experienced any other seepage or drainage problems. As to the slope of the steps, Mr. Hyde testified that one side of the steps had sagged over time. While the settlement of the steps was not what they would have perfectly liked, according to Mr. Hyde, it was |sobvious to look at. Furthermore, he opined that the sloping of the stairs would not have posed any problem in view of all of the repairs they had made. Mr. Falbaum testified that the plaintiff walked on the steps herself, noting that if the steps were slanted toward the house, it was easy to see. The defendants point out that the plaintiffs own inspector noted that the steps were not level.
 

 The plaintiff contends that the condition of the steps, combined with the information that the defendants gleaned from the 1993 Hyde letter, amounted to an undisclosed defect. However, the information in the Hyde letter — that water should be drained away from a house — was not of such a technical nature that it gave the defendants knowledge beyond that which is common sense and placed them in a superior position of knowledge to the plaintiff. Also, the letter does not specifically mention the steps.
 

 It is unclear from the record as to what defects the trial court found the defendants had knowledge. The testimony of Mr. Falbaum established that the defendants repaired all of the defects of which they were aware. Mr. Hyde verified in his testimony that Mr. Falbaum was “very meticulous” about maintaining the property. To the extent that the trial court may
 
 *1241
 
 have found that the defendants had knowledge of drainage defects at the time of the sale, it was clearly wrong.
 

 Furthermore, even assuming that there was a drainage defect pertaining to the steps, Mr. Falbaum testified that he walked with the Rplaintiff on the steps prior to the closing.
 
 [3]
 
 Any defect connected to the steps was as obvious to the plaintiff as to the defendants and the plaintiff was aware of it prior to the closing.
 

 Based upon the foregoing, we find that the trial court did not err in granting the exception of prescription as to all defects in the house and dismissing the plaintiffs suit.
 

 CONCLUSION
 

 The trial court judgment granting the defendants’ exception of prescription is affirmed. Costs of this appeal are assessed against the appellant, Susan Marie Deri-vas.
 

 AFFIRMED.
 

 [1]
 

 . On the property disclosure form, the defendants checked "yes” to a question as to whether any structure on the property had ever taken water by flooding. They then provided additional details: “Previous owner (Kay Maples) had water on lower level (1995). Upon our purchase (1999) I had three (3) French drains installed (2) on hill in back and (one) 1 behind west wall of 1st floor. NO water problems since 8/99.”
 

 [2]
 

 . La. C.C. art. 2534 stales, in relevant part:
 

 A.(2) However, when the defect is of residential or commercial immovable property, an action for redhibition against a seller who did not know of the existence of the defect prescribes in one year from the day delivery of the property was made to the buyer.
 

 B. The action for redhibition against a seller who knew, or is presumed to have known, of the existence of a defect in the thing sold prescribes in one year from the day the defect was discovered by the buyer.
 

 [3]
 

 . In addition to the defendants’ disclosures to the plaintiff in the form executed prior to the sale, Mr. Falbaum testified in his deposition that he made the plaintiff aware of the French drains when she visited the property and they walked on the patio. He also testified that he explained the reasons for the installation of the drains to her and advised her of the importance of keeping the drains open and the possible consequences of failing to do so. During the course of this conversation, he and the plaintiff walked on the steps in question.