CARAWAY, J.
Bln this legal malpractice action, the defendant attorney prepared a commercial lease. Plaintiff did not direct the attorney’s work on the lease but relied upon a co-tenant who executed the lease with her. When a dispute arose between the plaintiff and the landlord over the term for the lease and its optional • extension, plaintiff sued the landlord and the attorney in these consolidated actions. The attorney pled the peremptory exception of peremption. Following trial of the exception, the trial court ruled that plaintiff was aware of the disputed optional term for the lease for over one year prior to the filing of the malpractice action. The peremptory exception was granted. For the following reasons, we affirm.

Factual and Procedural Background

In 2006, the plaintiff, Hanh Williams (hereinafter “Williams”), and two other tenants, Alvin Gore (hereinafter “Gore”) and Jack Yost (hereinafter ‘Yost”), were renting office space in Shreveport at 315 Fannin Street. The building was owned at the time by the Downtown Development Authority (hereinafter “DDA”). Aside from a common address, Williams, Gore, and Yost had a business arrangement in which they shared office expenses and common areas.
In the spring of 2006, the DDA was negotiating the sale of the Fannin building to CDY Development Corporation (hereinafter “CDY”). Williams, Gore, and Yost decided to execute a second lease with the prospective new owner, CDY, in order to remain in the building. In furtherance of that goal, they attended a DDA meeting *3 addressing the CDY sale. At this meeting, 12Joe Greenwald (hereinafter “Green-wald”), CDY’s agent, agreed to enter a four-year lease with Gore, Williams, and Yost. DDA’s attorney memorialized this agreement in a March 30, 2006 letter to Greenwald. The letter reiterated the terms of the agreement as follows:
We’ve been asked by Alvin Gore, Hanh Williams, and Jack Yost to offer this letter of agreement to memorialize the discussions held at the Downtown Development Authority Meeting on March 28, 2006. According to our understanding, you, on behalf of and with full authority from your client, have agreed to lease to these three individual[s] the three offices that they now occupy at 315 Fannin Street at the same monthly rental rate the DDA now collects, that being $150.00 per office for a total rental payment of $450.00. This lease shall have a term of four years, beginning when your client takes ownership of the building.
Williams, Gore, and Yost received a copy of this letter.
With this agreement, Gore hired the law firm, Perkins & Associates, to draft the lease agreement with CDY. Gore’s prior attorney, Mark Perkins, was unavailable so Gore was referred to the defendant, Richard Ray (hereinafter “Ray”), an associate in the fern. CDY and the tenants desired a four-year lease with the same monthly rent as previously paid to DDA. Gore, however, testified that he desired an option to exit the lease after two years. “We had a four-year lease with an option to get out.”
On April 13, 2006, Ray contacted Green-wald and the attorney handling the CDY’s closing with DDA. His letter stated that:
It is my understanding that the new owner has agreed to allow some of the current tenants (Alvin Gore, Hanh Williams, and Jack Yost) to remain in the building for four (4) more years. We were retained by Alvin Gore to prepare a simple lease agreement that documents the intent of the parties.
Ray drafted the lease (hereinafter the “Fannin Lease”) and attached it to the April letter. Williams stated that she also received a copy of this letter and |sthe Fannin Lease. While Yost would benefit, he was not a named lessee on the Fannin Lease. Gore and Williams were the only named “lessees” in the Fannin Lease.
The term and rent of the Fannin Lease was stated as follows:
This lease shall be for a minimum of 24 months beginning on the date the deed transferring ownership of the property to CDY Development Corporation is recorded, with an option for an additional 24 months beginning 24 months after the date of recordation of the deed. After 48 months rental, this tenancy may be terminated at any time by mutual consent of the parties, or by either party by giving written notice to the other not less than one full calendar month before the date of termination. Any provision of this lease may be changed by Lessor in like manner. Any hold-over after termination date has passed shall- be considered at option of Lessor as automatic renewal of lease.
Lessee agrees to the monthly rental of $150.00 per month per office (3 offices-$450.00 total per month) payable on or before the first day of each succeeding month thereafter. Payments are to be made to CDY Development Corporation. Lessees will have a period of 10 days to make said rental payments.
The signing of this lease by the Lessor and Lessees acknowledge the receipt of a copy of this lease.
Gore and CDY executed the Fannin Lease on April 26, 2006. DDA sold the *4 property to CDY on May 4, 2006, and the deed was recorded the same day. Thus, May 4, 2006, is the effective date of the Fannin Lease. Williams, however, did not sign the Fannin Lease until May 30, 2006.
After acquiring the property, CDY immediately began extensive construction and renovations of their newly acquired building. When disputes arose regarding these renovations, the parties to the Fan-nin Lease came to an agreement in September. CDY agreed to allow Gore, Williams, and Yost to relocate to another office building on Youree Drive until the renovations were completed. Additionally, CDY agreed to pay any ^additional cost in rent as a result of this move. Thereafter, CDY sent a monthly check payable to Gore, Williams and Yost in the amount of $362.49, the added rental expense.
In early 2008, Gore’s health problems led him to leave the Youree Drive office and work at home. Thereafter, Gore contacted CDY and informed them to send his share of the reimbursed rent directly to his home address. Nevertheless, as a result of a dispute over CDY’s continued joint payment to the parties, Gore’s attorney, Perkins, sent the following letter to Williams on April -14, 2008, on behalf of Gore:
Mr. Gore has received a notice regarding payment for the months of February & March for space at 3772 Youree Drive, Shreveport, Louisiana.
There was no lease regarding that property and Mr. Gore has not utilized the property since February 1, 2008....
Furthermore, we know CDY was told to direct payments due to Mr. Gore to Ms. Williams. This appears to be misappropriation of funds, but we assume you will immediately reimburse Mr. Gore.
[[Image here]]
Ms. Williams: You know that I have defended and prosecuted other matters you have been involved (Kozak). So you know I would relish the opportunity to address you in court again; therefore, leave Mr. Gore alone or be prepared to litigate this matter.
After receiving this letter, Williams filed a disciplinary complaint on April 24, 2008, with the Louisiana Attorney Disciplinary Board (hereinafter “LADB”) agajnst Perkins. Since Perkins & Associates drafted the Fannin Lease, she alleged that Perkins had a conflict of interest by threatening litigation against her for matters arising out of the Fannin Lease.[1] She attached the Fannin Lease -with her complaint.
| .Williams alleges that CDY failed to send a rental reimbursement check for the Youree Drive office “after April 2008.” Gore testified that he also did not receive a reimbursement check beginning May or June 2008. The last reimbursement letter filed in the record is dated February 1, 2008. This CDY letter addressed to Gore, Williams and Yost states that:
Following our previous discussions of your relocation to Youree Drive, I am enclosing a check in the amount of $362.49 made payable to you, Mr. Gore and Hanh Williams as reimbursement for the rent for the month of February, 2008, as stated in Joe Greenwald’s letter of September 12, 2006 (copy enclosed). I will send a check each month in the amount of $362.49 until you relocate back to the Fannin Street building or the term of your lease expires.
On May 4, 2008, the original 24-month period for the lease expired without the *5 option for an additional 24 months being addressed by the parties. On June 19, 2008, Greenwald, on behalf of CDY, sent Williams the following letter in reference to her prior attempt to exercise the option:
Dear Hanh:
Please be advised I am in receipt of your correspondence this date. According to the terms of the subject lease the period for exercising the two (2) year option expired prior to the receipt of this correspondence. Accordingly, your request to renew the lease is denied.
Williams’ prior letter to Greenwald concerning the option/renewal was not filed in evidence.
Williams subsequently filed suit against CDY on January 22, 2009, asserting that the Fannin Lease was intended to extend for four years. CDY filed its answer and asserted that the two-year CDY lease had expired. On May 14, 2009, Williams also filed the action now pertinent to this appeal, | (¡asserting legal malpractice against Ray. Ray’s motion for consolidation of the two cases was granted.
Responding to Williams’ suit, Ray filed a peremptory exception of peremption and/or prescription. At the hearing on the exception, Gore, Perkins, and Williams testified. Gore testified that Ray drafted the Fannin Lease exactly as he requested. Gore testified that he desired a four-year lease, but he asked Ray to include an option to get out of the lease after two years. Gore testified that he understood that the option was not automatic but had to be exercised. Gore also testified that:
Well, it was going to be a total of 4 years unless they were to say we got office space ready for y’all again; you can move back into our building. And we didn’t want to move back again. It gave us an option.
Regarding the legal fee for Ray’s services, Gore paid the bill for the Fannin Lease. He explained that “we shared a lot-of expenses back and forth through things. • And they may have reimbursed me.” Significantly, Gore testified that Williams was aware of the lease’s term and option and even agreed that it “would be nice to have an out just in case.”
Williams testified that she did not read the Fannin Lease thoroughly prior to signing it. “But I read the letter that Richard Ray — when I pick up the lease, it said that this was to be 4 years.” Williams stated that she became aware that the Fannin Lease was not for four years only when CDY scheduled Ray’s deposition in March of 2009. Williams testified that she is a financial advisor at Chase Investment Services and holds a securities license.
17At the end of the hearing, the trial court granted Ray’s peremptory exception. The court noted that Williams is an educated person who should be held to have read the document she signed. The trial court also pointed to Williams’ controversy with Ray’s law firm in April 2008 concerning the LADB complaint, as indicative of her knowledge of the provisions of the Fannin Lease.
As a result, the trial court held that Williams’ suit against Ray was filed over one year from Williams’ knowledge of the option. From this adverse ruling, Williams appeals.

Discussion

La. R.S. 9:5605 is the legal malpractice peremption statute. It provides that:
A. No action for damages against any attorney at law duly admitted to practice in this state ... whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless *6 filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
B. ... The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
Thus, legal malpractice actions must be filed no later than one year from the date the plaintiff discovered, or should have discovered, the alleged malpractice or three years from the date of the alleged malpractice, whichever comes first. McGuire v. Mosley Rogers Title Co., L.L.C., 43,554 (La.App.2d Cir.9/17/08), 997 So.2d 23, writ denied, 08-2728 (La.1/30/09), 999 So.2d 757; Brumfield v. McElwee, 07-0548 (La.App. 4 Cir. 1/16/08), 976 So.2d 234. Legal malpractice is not perempted if it is brought within one year of the date of discovery and the record shows that the claimant was reasonably unaware of malpractice prior to the date of discovery and delay in filing suit was not due to willful, negligent, or unreasonable action of the client. McKinley v. Scott, 44,414 (La.App.2d Cir.7/15/09), 17 So.3d 81, 84; Waldrop v. Hurd, 39,855 (La.App.2d Cir.6/29/05), 907 So.2d 890, 893 citing Campo v. Correa, 01-2707 (La.6/21/02), 828 So.2d 502; Ledbetter v. Wheeler, 31,357 (La.App.2d Cir.12/9/98), 722 So.2d 382, 385.
The party raising an exception of prescription or peremption ordinarily bears the burden of proof at the trial of a peremptory exception. However, when prescription is evident from the face of the pleadings, the plaintiff bears the burden of showing the action has not prescribed. Scranton v. Ashley Ann Energy, L.L.C., 46,984 (La.App.2d Cir.4/11/12), 91 So.3d 1174, 1178-79, writ denied, 12-1345 (La.9/28/12), 98 So.3d 846. When evidence is introduced at the hearing on the peremptory exception of prescription, the district court’s findings of fact are reviewed under the manifest error-clearly wrong standard of review. McKinley, supra, citing Carter v. Haygood, 04-0646 (La.1/19/05), 892 So.2d 1261; Alexander v. Fulco, 39,293 (La.App.2d Cir.2/25/05), 895 So.2d 668, 674, writ denied, 05-0781 (La.5/6/05), 901 So.2d 1107.
| cThe date of discovery is the date the negligence was discovered or should have been discovered by a reasonable person in the plaintiffs position. Teague v. St. Paul Fire & Marine Ins. Co., 07-1384 (La.2/1/08), 974 So.2d 1266. Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. Percy v. State, E.A. Conway Memorial Hasp., 478 So.2d 570 (La.App. 2d Cir.1985). Constructive knowledge is whatever notice is enough to excite attention and put an injured party on guard and call for inquiry. Campo, supra at 510. The ultimate issue is the reasonableness of the tort victim’s action or inaction, in light of his education, intelligence and the nature of the defendant’s conduct. Id.
Since the merits of the controversy over Ray’s representation of Williams were not the subject matter of the peremptory exception, we may assume the attorney-client relationship between the parties as Williams alleges. The alleged event at the center of the malpractice claim is the ter *7 mination of the Fannin Lease on May 4, 2008. Dispute regarding the termination of the lease remains in the consolidated action against CDY. Williams’ suit against Ray was filed on May 14, 2009, over a year after the Fannin Lease’s disputed termination date. Thus, we consider that the one-year period of La. R.S. 9:5605 is evident on the face of the allegations as having run, and that Williams had the burden of showing that she could not have discovered the alleged flaw in the Fannin Lease before May 14, 2008.
Williams asserts that the references in the Fannin Lease to multiple “24 months” periods did not alert her that the lease term was less than four |1f)years. She claims the Fannin Lease is ambiguous, creating different interpretations for the lease term and the manner of execution of the option. In June of 2008, CDY informed her of its position that the Fannin Lease had terminated. Yet, Williams maintained at trial that she did not understand Ray’s failure of performance until 2009.
In his defense, Ray urges that certain facts were sufficient to call for inquiry by Williams. A most important fact dispute which the trial court resolved in favor of Ray concerned Williams’ initial knowledge of the option. Gore testified that in 2006, he and Williams discussed the option and that she agreed that “an out” was desirable. The “out” is expressed in the written lease as the option right falling between the two 24-month periods. From Gore’s testimony, the trial court could discredit Williams’ claim that she did not read or understand the Fannin Lease when she signed it in 2006.
Additionally, Gore’s sole direction of Ray regarding the confection of the Fannin Lease and his later discussion with Williams evidences Williams’ duty of inquiry to obtain from Ray, Gore or the lease itself knowledge about the option. Gore testified to his understanding that the option had to be exercised.
CDY’s discontinuance of reimbursement payments is another fact showing Williams’ knowledge regarding the disputed 2008 renewal of the Fannin Lease. She alleged in her petition that “after April 2008,” CDY stopped making the monthly reimbursement payment to her and the others for the Youree office rent. CDY’s various reimbursement letters, including | nits February 1, 2008 letter, were filed in evidence. All were dated on the first day of the month and included a check for reimbursement. There is no letter in evidence for April, and Williams clearly admits she did not receive reimbursement from CDY on May 1, 2008. This was immediately before the disputed option time for the Fannin Lease. The lease arrangement was therefore in dispute by that time.
Finally, despite her burden of proof, Williams did not produce her letter to CDY which prompted CDY’s June 19, 2008 letter disputing her right to renew the Fannin Lease. The actual date of her earlier letter in June or even before is unknown. Nevertheless, the fact that she requested the renewal of the Fannin Lease at that time demonstrates her ability to conclude that the Fannin Lease was not for a four-year term and that her action for renewal was required. Her claim that she could not discover the deficiency in Ray’s actions in preparing the lease until 2009 is discredited by her 2008 letter which was not produced at trial.
The trial for the exception of prescription and peremption is an evidentiary proceeding. La. C.C.P. art. 931. The findings of fact by the trial court at such trial of the exception are subject to our manifest error review. The present determination of Williams’ knowledge of Ray’s ac *8 tions, whether actual or constructive, clearly involved the trial court’s credibility rulings, and the trial court’s findings may not be overturned as clearly wrong.

11⅞Conclusion

For the above reasons, the trial court’s grant of the peremptory exception is affirmed. Costs of appeal are assessed to appellant.
AFFIRMED.

. On January 15, 2009, LADB ruled that Gore was the only client of Perkins & Associations and that Williams was simply a third party beneficiary of the firm’s services.